The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Good morning, ladies and gentlemen. We have five cases on the calendar this morning. Three consolidated cases from the PTAB, a patent case from the ITC, and a case from the Court of Federal Claims that has been submitted in the briefs and not argued. The consolidated cases are C.R. Bard v. Medline Industries, 2020-1900, 1908, 1910. Mr. Matsui, please proceed. Thank you, Your Honor, and may it please the Court. Brian Matsui for C.R. Bard. I would like to primarily address two issues. First, the Board's error with respect to the requirement that two syringes be stored in one compartment and a medical assembly in another compartment. While that error runs through all three patents, it is enough to reverse or vacate the Board's decision for all the claims from Claim 45 and higher that are addressed in the 088 patent appeal. Second, I would like to address the requirement in Claim 7 of the 596 patent that the drainage bag be positioned between the tray bottom and the catheter. This error adds Claim 7, 8, and 13 that should be reversed or at least vacated in the 596 patent appeal. With any time remaining, I will address the other issues. The Board's errors there largely flow from or are related to the kinds of errors the Board made and the two issues that I want to focus on. So starting with the two syringes in one compartment requirement, the Board committed a simple legal error in how it applied obviousness. This is a simple requirement. It just requires two syringes in one compartment and a medical assembly in another compartment. The Board found that the prior art disclosed all the elements in the claim tray, syringes, a Foley catheter, sterile materials, multi-compartment single-layer trays. But the Board imposed anticipation-like requirements in the obviousness analysis. It required that a single reference expressly disclose two syringes in one compartment and it dismissed each reference one by one while ignoring combinations and the creativity of a person of ordinary skill in the art. If we look at the 088 appendix, pages 44 to 47, in four pages there, the Board individually dismisses Salazzo, Serrani, and Distin for not expressly describing or describing two syringes in a compartment, and it does so about ten times in those four pages. Now setting aside that another reference- Mr. Metcalfe, you're saying that it's fairly obvious within the skill of a person of ordinary skill to add a second item of the same nature as the first item in a kit of this sort? Certainly, Your Honor. I mean, for over 60 years there have been single-layer trays with these types of items, and we have the MI reference that shows multiple syringes in a single compartment. We have Serrani, which shows in single-layer trays cleaning bowls stored together, and it was well within the capabilities of a person of ordinary skill in the art to move syringes from one tray to another. I think an important fact here is that Salazzo itself discloses two syringes. It specifies that one of those syringes, an inflation syringe, is in compartment 27, and the medical assembly is in compartment 3. But for that second syringe, which is an irrigation syringe, it doesn't specify what compartment that that syringe is in, and there just aren't very many places that you could put that second syringe. As our expert explained, it was really compartment 3 or compartment 27. So you're really dealing with a finite number of predictable choices of where you could put that second syringe. It was really only going to be in one of those two compartments. But as I mentioned... What kind of deference do we owe to PTAB? They did a fairly thorough job, didn't they? Well, this is a legal error, Your Honor, so this is reviewed de novo because the board, when you look at those pages from Appendix 44 to 47, it was just analyzing each reference one by one and faulting them for Salazzo not expressly describing two syringes in one compartment or Serrini only describing a single syringe. That's a legal error, what the board did there with respect to the obviousness analysis. But even if the court were to sort of look at this as a factual issue, which I don't think it should because of the requirement of expressed disclosures, there certainly isn't any substantial evidence to support the board's decision that a person of ordinary skill in the art could not put two syringes in one compartment, particularly because really the question here is just where do you put Salazzo's second syringe? Because Salazzo describes that there are two syringes in it. You have both an irrigation syringe and an inflation syringe, and that irrigation syringe has to go somewhere in the tray. So really there are only a couple options where you could put it. Do you think the board was essentially examining for anticipation, not obviousness? It really seems that way, that it was looking for, at least with respect to these court claim requirements, it was looking for anticipation-like references because it just examined each reference one by one, and then the only fault it really gave at all was that the reference itself did not describe or expressly describe two syringes in one compartment. And that's why that really makes this case almost like a KSR, where you didn't have prior art that separately disclosed electronic sensors, pedals with six pezit points, no single prior art reference disclosed that. But the claimed arrangement was obvious, and that's what the Supreme Court has said. That's what this court has said on numerous occasions. Mr. McLeary, this is Chris Chen. For this category of claims dealing with two syringes in one compartment, medical assembly in a second compartment, I believe there is at least one of the claims in this category that talks about specifically an inflation syringe and a lubrication syringe. Is that right? Well, with respect to, like, Claim 45 and higher, it's really talking about just two syringes in one compartment. Right. It's true for the 088 patent. I'm talking about one of the other two patents in this consolidated set of appeals, or this combined set of appeals. Yes, Your Honor. Claim 7 of the 596 patent, I think, is the inflation and lubrication syringe. Correct? That's correct. And there's no dispute, though. Mr. Matsui, so I understand. Your theory of obviousness for Claim 7 of the 596 patent would be that it would be obvious or a skilled artisan would be motivated to have three syringes in Compartment 27 of SOLASO? I mean, certainly that is. I mean, just to take your question in steps, I mean, it would have been obvious to replace a lubrication syringe for the lubrication tube. That's basically undisputed. And the board and the 400 IPR agreed that it would have been obvious to place lubricant in a syringe and to substitute the lubricant syringe for a lubricant tube. But, yes, I mean, MI teaches that you can put three syringes in a single compartment. So it would have been obvious, and certainly within the skill of a person of ordinary skill in the art, to put all three syringes in Compartment 27. There's nothing that would dissuade a person from ordinary skill in the art from doing that, and it certainly was within their level of skill. And you had references like MI, which had the multiple syringes, three syringes, in fact, in one compartment. You have Sereny, which shows storing like materials together. Persons of ordinary skill in the art, as both Distin and Sereny show, would want to put things, you know, in an order that would be useful so they could easily move the syringes around to find a good way for them to be used. But then looking at Claim 7, the other requirement in Claim 7 in the 596 patent that I'd like to talk about, which is the drainage bag positioned between the Foley catheter and the tray bottom, which affects Claim 7, 8, and 13 of the 596 patent, the board made two errors there. And the first is that it repeated its express disclosure requirement. It effectively required a picture specifically showing the drainage bag between the tray bottom and the catheter. And we're in the 596 patent, which is the 1910 appeal. And if we look at Appendix 20 of the board's decision, they say, Sereny simply fails to expressly describe or illustrate a fluid receptacle that is wholly located between the bottom of the container and the catheter. In Appendix 19, it says, without such an expressed description, we agree with Dr. Singh that Sereny illustrates at least a portion of the fluid receptacle being located above the catheter, not between the catheter and the bottom of the container. And then in Appendix 20... Yes, Your Honor. And I don't think there's any dispute that you could move these items in different containers within the single-layer tray. I mean, the board found that in the 400 IPR appeal, the 400 IPR, which bedlined it in appeal, that you could move various items and there would be motivation to combine references like Sereny and Sulazo together. So I don't think that there can be any dispute here that it was within the level of ordinary skill in the art, in this very simple field, to be able to arrange items in different ways. And then you have prior art references like Sereny and Distin, which basically provide motivation for persons of ordinary skill in the art to do so in ways that would be convenient for the user. Mr. Masturi, this is Judge Bryson. I wonder if I could turn your attention, if you were done with that discussion, but either complete your thought on that or turn to Claim 1 of the 088. And in particular, if you would address the limitation requiring the first compartment base member defining a mnemonic device indicating which of the devices is to be used first. Yes, Your Honor. So with respect to the syringes at different heights requirement of the mnemonic device requirement, all that's required with respect to that claim requirement is some sort of base structure that would basically, you know, indicate a different height requirement. So that would indicate to the user which syringe basically to use first. Let me ask you a follow-up question then with respect to that assertion. Do you think that if one syringe is slightly higher than the other, but they are at opposite ends of a large chamber, that that is enough by virtue of their slight difference in height to establish the mnemonic device limitation? I think so, because these are very broadly written claims. But I don't think that the court has to go so far where you say it's a very slight level of height. You have Salaza, which has a terrace bottom. The board found that it has a terrace bottom with a high area and a low area and has the lubricant at a higher level than it has the inflation syringe. And given that terrace bottom, a person of ordinary skill would understand that you have the different height requirement here that's required by these claims. Now, some of the claims require different height. Different height requirement is required by a number of claims, but the mnemonic device requirement is, as far as I can tell, only in two of the independent claims, including claim one of the 088. And so what I'm trying to see here is whether your argument is that as long as there is a difference in height, that satisfies the mnemonic device requirement, and in particular the requirement that the compartment base member defines such a mnemonic device. In your view, is height difference enough? So I think to sort of take apart that question, Your Honor, the base member in Salaza is terraced. And so in that sense, it is having a mnemonic device. And the height requirement comes from the fact that the patent itself says that having things at different heights is a mnemonic device. It has, like, for example, a stair-stepped base member. Atzui, I realize that Salaza itself describes the floor of the tray as a terraced arrangement. But in reality, I think we can all agree it's a sloped floor to the tray, right? And the board then made a fact finding that any syringe that's placed on the sloped portion of the floor would roll down to the bottom, to the flat bottom section of the tray. Is that right? I mean, yes. If you took all the items out, the board was saying that the items might fall down to the bottom. But that's part of the problem because the board there imposed additional claim requirements in its analysis because it basically required that the syringes be held in place without anything else helping them to stay in place. It required a specific contour and shape for the syringes to be held. But nothing in the claims required that. All that it requires is the base member that has the mnemonic device, which we have as the terraced bottom, or in the claims that just require because some claims don't require the mnemonic device. In the claims, it just requires different heights. It just requires them to be supported at different heights. And nothing in that claim language would require that it's the base alone that has to support the syringes at different heights or that the base alone has to provide that height requirement. And so it was only by the board's decision. I guess if you look at claim 25, it recites that the first compartment itself is supporting the first and second syringe at different heights according to the predetermined steps of the catheterization procedure. So I guess what I'm looking at there is why was it wrongheaded of the board to understand that this limitation is calling for something about the design of the compartment itself that supports these syringes at different height levels? Well, the base of the tray is still supporting the syringe, even if it is resting on other items. It's just like I'm sitting on a chair right now, but the floor is still supporting me, even though I'm sitting on the chair. The issue here is just whether or not with this broad claim language, whether the syringe is being supported by the tray. And it is, even if there are other items that are helping it maintain that different height. And we have in here, as I mentioned, a terrace bottom. So we have a tray bottom shape that would basically lead to those syringes to be stored at different heights. And there's just nothing in the claims that require that it be supported by the tray bottom alone or that have that specific shape or contour, which the board required. And just, you know, an additional point I'll make, Your Honors, is that we were never given any notice that the board was going to impose these requirements upon us until the final written decision. So at the very least, we should get a remand. In the patent owner's response at JA 542, didn't the patent owner make this very argument that Sollozzo's sloping floor can't possibly support the syringe located there because it'll just roll down to the bottom? Your Honor, but they never asked for any sort of specific claim construction with respect to this requirement. It was only in the final decision that you started to get language like the contour and shape. The point is that wasn't that enough notice to you that clearly the patent owner was arguing inside of that argument against Sollozzo was the patent owner was contemplating a specific conception of this different height limitation and what's required of the design of the tray to create and establish different height arrangements to support the syringes? I think that just was not specific enough to give us the notice that would be required, particularly had we known that the board was going to impose these requirements, we could have shown that you could have different requirements like syringing, where it shows the forceps are stored above the cleaning balls. And so I don't think that that's a situation that's fair to the petitioner to have or to a party to have a claim construction effectively imposed on us in the final written decision. And it makes it like those the other cases where this court has remanded. Since we're beginning to run out of time, I would like for you to address, if you would, claims 10 and 15 of the 761 patent and in particular, the limitations requiring that the first compartment lubricating jelly chamber or lubricate as the catheter passes from one chamber to the next. I don't see that limitation being suggested by anything in the prior references, other than that little notch in Salazzo's divider. Do you rely entirely on that little notch? I mean, yes, the notch is what shows that you can have the pass-through limitation made as you go from one compartment to the other. And Medline itself really doesn't make any arguments with respect to this limitation, other than to say that you couldn't or wouldn't put lubricant into the compartment 27 of Salazzo. The idea, since the limitation requires that it be lubricated as the catheter passes from one to the other, is the idea that you would put lubrication on the edge of the notch, is that the concept that you have in mind? No, as you would pass the catheter through, then it would basically have the lubrication that would go from one compartment to the other. Mr. Matsui, would you regard that as a use limitation? And this is an article of manufacture, it's not a method claim. Would you regard that lubrication as not lending patentable significance to this claim? Yes, Your Honor. All that is required here are the structures, and we have the necessary structures disclosed in the prior art. If there are no other questions, then I'd like to reserve my time for rebuttal. We will do that. Mr. Hoover. Yes, Your Honor. If there are no other questions, am I audible enough? Enough. Okay, well, Your Honors, thank you very much. Good morning, and may it please the Court. Alan Hoover for Medline. Challenger, in this case Bard, in its briefing and at the PTAB, has ignored a number of fundamental issues with their patent challenge. One question that must be asked in an obviousness analysis is, was there a need in the art? And did the patent owner or the patentee solve that need, or attempt to solve that need with their… Mr. Hoover, I don't know that that's the first question in an obviousness analysis. Isn't this a KSR case where we've got an article of manufacture consisting of all known materials used for their well-known purposes, arranged in various ways, and the only distinguishing features seem to be the shape of the container and perhaps a use aspect of some of the claims? I think the claims here are directed towards a product or method where the components are known in the art, but are arranged and provided in a new way. Did you say a product or method? I thought they were all apparatus claims. I believe they're all apparatus claims in the challenge claims for this appeal. Yes, Your Honor. All right. So, looking at the Scalazzo reference, the problem to be addressed is the county problem, catheter-associated urinary tract infection. And we asked the experts for Bard and the expert for Medline both testified that the Scalazzo reference would not be useful in solving the county problem. Bard has not rebutted that in its briefing before the court, but both party experts have agreed that that was the case, that Scalazzo reference would not be useful in solving the county problem. I'm not sure how the obviousness challenge that Bard raises gets off the ground with that unrebutted... Mr. Hoover, Mr. Hoover, I understand you have this broad-based position, but it would really help me if we got down to something more nitty-gritty as to the different issues with specific claim limitations. Like, for example, why wouldn't it be obvious to put two syringes into Scalazzo's compartment 27? We know there's a second syringe. Scalazzo doesn't identify where it stores that second syringe, but it would seem to be plenty obvious to a skilled artisan that you would put it where the other syringe is already illustrated as being disclosed, that is, compartment 27. Scalazzo has multiple compartments, Your Honor. It has two lubrication compartments. It has a lubricant packet. For example, one skilled art might consider placing the lubricant packet in the lubrication channel or lubrication well of Scalazzo, and if there were a syringe, it could be placed in there. You're saying a syringe could be put in the lubrication well 31 or 33? Yes. The board found that it was not obvious to do that with respect to Claim 45 of the OADA patent. The board considered the expert testimony and considered the references in detail and made a factual finding. Okay. The question is why wouldn't it be obvious to place Scalazzo's second syringe in any existing compartment of Scalazzo? I think that the claim requires more than just two syringes in a compartment. I'm just talking about that particular limitation, though. Pardon me, Your Honor? I'm talking about just that limitation, the second syringe of Scalazzo. You have to put it somewhere, and any of the illustrated compartments in which a second syringe could fit would seem to me to be a very obvious place to locate Scalazzo's second syringe. Am I missing something? Well, I guess the board found otherwise. I think the exercise today is on the standard of review. Was there evidence to support the board's finding that it was not obvious to do that? No. We have expert testimony to that effect, and given the expert testimony, which is substantial from really all the experts, but particularly Medline's experts, the board's decision should be sustained on that ground. I would point out further that... Can you tell me what experts said? Any of the experts said in the record that explains why it would be not obvious to put the second syringe in compartment 27. Well, I... A skilled artist would not be motivated to locate it there. On that point, I would refer you to the testimony of Mr. Plitschke and Dr. Yoon, who are bars experts who refer to the general nature of the kit of Scalazzo, and both of them said... Mr. Plitschke, for example, this is a patent illustration that's teaching certain concepts. It's not a design drawing showing how something would be made if it was to be put into production. So we know that there's a syringe, the second syringe of Scalazzo somewhere in the kit. It doesn't have to be in the tray. The kits have been made in the past with separate boxes, with separate components, and is it possible that it could be placed somewhere else? Could it be placed, for instance, on top of the wrapping of the kit? Could it be placed in a separate box, as in the Stirani reference? Separate box from the catheter assembly, which is also a requirement of the claim, Claim 45. So there are other places where it can go besides in the compartment. And so the board found that it was not obvious, based on the references, to put them... One of Scalazzo and the other would not be motivated to put it in a second compartment, or in the same compartment as the other syringe, or syringes in Scalazzo's case, and with the catheter assembly in a separate compartment. Mr. Hoover, could you address Claim 1, and in particular Mr. Matsui's arguments with respect to the first compartment support, that the base members support defining a mnemonic device? Yes, Your Honor. BARB did not ask for any special construction of that term. As the patent challenger, it was incumbent upon them to do so. We did point out, as you noted in our patent owner response, that that is how we were construing the reference, was basically that the tray itself is supporting the syringes and defining the mnemonic device. In other words, you're saying that a device is simply the shape of the container. I think it's the tray, Your Honor. And that's a device? I don't think that the other component... The argument that BARB is making is correct. The word mnemonic, in my understanding, means memory, and that sort of calls for the mental step of thinking that something at a higher level is to be used before an item of a lower level. That's a very strange claim. Well, the claim does call for the tray to have the mnemonic device. There's nothing in the patent that suggests that if it was stuck on top of other stuff, for example, that it would be somehow a mnemonic device. The evidence here is that Celasco does not, in fact, teach the syringes at any particular heights. The testimony of Dr. Pliska and Dr. Yoon is very much on point on the syringe height of the illustration in Celasco. Mr. Pliska said he... We asked him, well, what are the two lines in the one drawing of Celasco? And he said, to tell the truth, I'm not 100% sure. We asked Dr. Yoon where the lubricant was positioned in Celasco. In Barr's brief, they refer to this as Dr. Yoon was testifying about the syringe. He was actually testifying about the lubricant height. And he says, I don't know if that represents some type of ledge or not. Mr. Hoover, you won, obviously, in the patent office. But then you start off your brief by saying the court should affirm for other reasons that the references are incompatible with each other and that there were secondary considerations that the board didn't consider. That's... Can you explain why you didn't start out defending what the board did? You had to look for other reasons to affirm? Well, I guess I think the... There are such strong reasons for affirmance on multiple fronts, Your Honor, it was hard to choose, frankly. I feel that the Celasco reference describes the tray and the reference teaches that urine and clots are to be dispensed into the tray and the Celasco tray, therefore, you would not add a bag to it. And to me, that is very compelling. I also find the secondary evidence here to be very strong. It's undisputed that Barr copied the Medline device. They praised it. They called it innovative. And so we thought that that was evidence the court should hear. Nonetheless, on the factual findings, they are also very strong. On this issue of the height of the syringes, all four experts agree, all four technical experts agree that the Celasco reference doesn't show that feature. And so on just the basis that the board did decide that that particular feature is not found in Celasco and it's not found in the other references either. I'd like to discuss, if I might, the lubricating jelly application chamber. We have evidence from our expert, Ms. Chiapetta, that the Celasco tray was not useful for lubrication, the retest 27. The compartment that Celasco shows is too deep. And she says if you put lubricant there, the purpose of the Celasco tray, again, is to dispense urine and clots. Mr. Hoover? Mr. Hoover, this is Judge Chen. When I look at compartment 27, you know, there's this question of whether it's too deep so that you could lubricate the tip of a catheter. And I guess what I'm wondering is why is it too deep? I mean, why can't you just, you know, dip the catheter down into that compartment until the tip reaches where the jelly is? And like a French fry, with ketchup, you've dipped the tip of the catheter into the jelly. Well, this is the medical procedure, and this is done in fairly high volume. And in hospitals, in the emergency room setting, for example, where things are very stressful, and Ms. Chiapetta did opine that it was not really sized for that. Could somebody make it work? I guess probably so in your French fry analogy. But the use of the device is in the hospital-type setting, caregiver setting, and the compartment was deemed to be too deep. That's the evidence, among the evidence that Ms. Chiapetta presented. I understand you have an expert that said that. I'm really trying to understand why is it too deep. Why is it unusable? Is it something about the claim language itself that requires structurally a, I don't know, a shallow well or compartment, as opposed to something a little deeper like Compartment 27? I don't think that Celesto Compartment 27, with the wall that's shown, would allow a user to reach one's hand in there to lubricate the catheter. Could you sort of shove the catheter down in there? That's not really conducive to how a medical procedure should be performed. How do we understand, then, your claim? I mean, to me, if I could use Compartment 27 as a ketchup well for my French fry, what is it about your claim term, about a compartment configured to receive lubrication jelly to lubricate the catheter tip, as somehow forcing me to understand that we're talking about a very shallow well? In addition to the shallow... I guess that's what I'm trying to understand. What is your conception of what that claim term means? I think it means a place where lubricant is dispensed in the use of the kit. Ms. Chiapetta and Dr. Singh testified additionally that in the Celesto tray... Ms. Chiapetta said that in the Celesto tray... Mr. Hoover, you keep referring to Celesto. Right now, I'm asking you a different question, which is, what is your understanding of what the claim actually requires? Don't talk about Celesto. Put Celesto away. Let's just talk about what your claim means and how a skilled artist should understand it as a structural matter. What is the structure of the compartment for receiving the lubrication jelly that requires it to be something that's not too deep? I think it must be suitable for receiving lubricant when used in the catheterization procedure. And what does suitable mean? I think the user must be able to lubricate the catheter effectively in that compartment. Okay. And can you just explain to me, one person to another, what is it about Compartment 27 that makes a person unable to use that well as a place to lubricate a catheter tip? As Ms. Chiapetta explained, that well is where urine and clots go in the Celesto device. When you catheterize a patient, you often need to measure the urine output. You need to evaluate the urine. Putting that to the side, I'm talking more about the structure of Compartment 27 and how it is configured as a structural matter. You're telling me it's not configured to receive jelly and to lubricate the catheter tip. I refer, Your Honor, to I believe it's the Gianelli case where there were handles in the exercise machine, and they're configured for pushing, and the prior art had handles, and they were configured for pulling in that particular machine, in that embodiment. So they're just handles. So you could say, well, any handles, you could push or pull them. But the court said, no, in the prior art, they were not configured for pushing, I think it was, because the machine was expressly designed for pulling, and you couldn't be used for pushing. I think this is the case on that front. Is it a plastic surface of a tray? Yes. Could lubricant be placed on the plastic surface of a tray as a general matter? Of course. And Solasto is in a lubrication jelly application chamber? Absolutely not, for the reasons given by the experts, and in the same order as this Gianelli case with the handles. I think you have to look at the context of the reference and what the reference is teaching you to do, not simply at is there a plastic surface that lubricant would rest on. And that is how I would distinguish the Solasto Compartment 27. Would that be okay, Your Honor, if I move to the 596 and the drainage bag and the orientation thereof? Sure. Please proceed. Yes. Again, we hear from Bard in his briefing in an argument today that there was a surprise plane construction. Again, that is also not correct. Bard, who is incumbent on Bard as the patent challenger, under the board rules, to have presented any particular plane construction that he thought deviated from, I guess, the plain meaning of the terms. The evidence shows that the Stirani reference doesn't meet that claim limitation. It shows a catheter going around the bag and not on top of the bag, and it's not really positioned for the immediate use, as it is in the Medline patent. And so I don't believe Bard is correct, either as a legal matter or on the facts. The board found facts that the Stirani reference doesn't show that feature. And given that, that was the only reference that Bard relied on for that feature. Those claims are sustainable on that basis as well, independently of the two syringes. I'd like to talk, Mike, Your Honor, about the Amai reference as well. We've heard a lot from Bard about the Amai reference. I guess one point is that they didn't put the Amai reference in the challenge grounds, but I understand it's in the record so the court can consider it. But we do have evidence from our expert, Dr. Singh, that the Amai reference is not relevant. And in the 109 IPR, the board expressly credited that declaration and discounted the opinion of Bard's experts. That's happened in quite a lot of these proceedings. But why is Amai relevant? In one of the proceedings, the board found that Amai was not relevant because it talked about a completely different procedure. In another one of the proceedings, the board found that the Amai reference was schematic in nature, wasn't really showing you a specific structure. Now, one of the points that Bard makes is that in the 36th IPR, I believe, that the board didn't discuss Amai, so therefore there must be an error. Well, in the other 35 IPR decided the same day, and in the other IPRs decided on the same references, the board did discuss Amai and did distinguish it and differentiate it. So the fact that they did not mention it in one of two IPR decisions decided on the same day is not a basis to reverse. Could you talk about the various potential issue preclusion issues here? Let's assume for the moment we have to send some of these claims back to the board. And the other side has made an argument that there's no need to consider any of the secondary consideration evidence. Moreover, there's no need to consider your arguments about motivation to combine SILASO with a drainage bag because there's issue preclusion there given an already final board proceeding, as well as replacing the lubrication tube with a lubrication syringe. Certainly. I'll tackle them in that order. On the secondary considerations, as we've indicated in our brief, the board didn't make nexus findings on essentially all of the secondary considerations that we presented. There are hundreds and hundreds of millions of dollars of sales of these products. We put in evidence tying that to the claims. People buy the product because they really like it, not because of other reasons. We put in evidence of copying. We put in evidence of praise. BARB called the Medline product innovative. The board didn't reach that. The board didn't reach that in the other IPR for the 400 patent. They didn't explain why they didn't reach it. I think there's one issue that the board did decide against Medline, and only one on the secondary considerations, which was that Medline had not proved that the kit itself was the sole cause of the decline of county rates in the out. I would say that that's an issue that we'd be precluded on. On the issue of the motivation to combine, we did, as the court has noted, lead with that. Eleven days after we filed our brief, this court decided the Sting Court case, which Barb helpfully cites in its brief. That case goes against us, and so we're going to drop that issue for this appeal. On the motivation to substitute a lubricant packet for a syringe in the Salozzo reference, we didn't contest that below. Mr. Hoover, I missed what the issue was, again, that you said you were dropping for this appeal. I think that we have argued that the sole issue that we will drop for this appeal is the adding a bag to the Salozzo reference. Barb has said that we are precluded because we didn't appeal the 400 patent, and so could somebody use the Salozzo reference with a bag? We don't feel that that's a correct position for the reasons we stated, but the board held against us on that issue, and that issue was not a factor in any of the four IPRs that we are here on today. The board did not agree with us in any of those proceedings that adding a bag to Salozzo was somehow a factor. What the board did do was find that other features of our claims were absent from all of the references. The board weighed evidence, decided credibility issues, agreed with Dr. Sting, agreed with Ms. Chiapetta, disagreed with Barb's experts on a number of occasions, discounted their testimony, and Barb's appeal today is predicated on asking the court to reweigh that evidence in large part. But with that, Your Honor, I think I'm out of time. Unless the court has further questions, I would like to pass back to Barb's counsel. I don't hear any further questions. Thank you, Mr. Hoover. Mr. Matsu, we have some rebuttal time. Thank you, Your Honor. So I'd like to start briefly with the two syringes in one compartment limitation. Our experts explained at Appendix 1395 that the two possibilities basically were compartment 3 or compartment 27. There was never any discussion that I'm aware of of storing the syringe outside of the tray itself, and so you're dealing with a finite number of predictable places in which you could put that second syringe for Salazzo. With respect to the drainage bag, it's very similar. You have a drainage bag positioned between the Foley catheter and the tray bottom. There really only are a couple places that you could put the catheter. You could either put it basically underneath the drainage bag. You could put it on top of the drainage bag. I suppose you could put it around the drainage bag. But in those last situations, you're going to have a situation where the drainage bag is positioned between the Foley catheter and the tray bottom. There's, again, just a finite number of predictable solutions in which a person of ordinary skill and the art could figure out where to position these various items within a tray. And then when you look at a prior art reference like Distin at Appendix 33 of the 596 appeal where you have the bag that's flat on the tray bottom itself, given the fact that you basically want to have these trays so they're ready to use so you can use them in the order in which the items are going to be used, the only logical place in which you would put the catheter is on top of the fluid receptacle bag. With respect to the lubricant compartments, the claim language here is just the first compartment is configured to receive lubricating jelly. There's nothing that would indicate any sort of shallow structure or any sort of additional types of requirements. Again, these are apparatus claims. They're not method claims. So all that matters is that you have the structure. And with respect to Salazzo's compartment 27, Nurse Chiapetta basically said at Appendix 10936, and this is in the 596 appeal, that she criticized Salazzo's central compartment as relatively deep. But then her conclusion at the bottom was that clinicians are more likely to use an open flat space. So it's not that they're not going to be used. It's not configured to receive lubricating jelly. It's just that they're more likely to use a shallow container. So, again, you have Salazzo that meets the broad requirement here that it's just configured to receive lubricating jelly. Go ahead. Mr. Matsui, in your view, what would you consider to be a chamber that would not be configured to accept lubrication for purposes of lubricating the tip of the catheter? I'm not entirely certain what type of chamber wouldn't be configured to receive. My problem is you seem to be saying basically anything would qualify to satisfy this limitation. If you can give me an example of something that you would agree would not qualify, I would be interested in hearing what it is. I mean, one can imagine that there could be a container that could be shaped a certain way that would prevent the actual catheter to get into it. We're thinking about these trays fully in the context of them being dipped down with basically compartments that go straight down. But one can imagine a tray that would have situations where the compartment goes off to a side in which you could not put the catheter actually to fit inside that compartment. But here we have a situation. I don't think the court needs to address that type of hypothetical because here we have a tray that clearly is configured to receive lubricating jelly. Mr. Matsui, what if compartment 27 in SILASO was 12 inches deep? Would that be too deep? I don't think it would, Your Honor, because catheters themselves are very long. And so I think that certainly at some point you could get to a situation where a catheter just would not be able to reach the bottom of the tray. But I don't think 12 inches might accomplish that. And then finally, what do you have to say about what the board said, which was, well, the way SILASO is designed, compartment 27 has nothing to do with receiving jelly. That's where wells 31 and 33, that's where SILASO describes and discloses the place to squeeze out the lubrication jelly. And compartment 27 is all about the urine overflow and things like that. So that would probably be one of the very last places where you would squeeze out some lubrication jelly. So can you describe, can you respond to that? I mean, our expert explained that clinicians would put lubricating jelly in lots of different compartments. And, again, we're talking sort of more, the board's conclusion there is talking more about how the tray would actually be used by actual clinicians, not what the structures of the tray themselves are. And since these are apparatus claims, the mere fact that they have these structures is enough for the claims to, the claims would have been obvious. And I understand my time has expired. If there are no further questions, we would ask that the court reverse the board. Thank you, counsel. We appreciate the arguments of both counsel and the cases submitted.